SARAGOSSA, The (HUSSEY v.). See Case No. 6,949.

## Case No. 12,337.

### The SARAH.

[Blatchf. Pr. Cas. 195.] [1]

District Court, S. D. New York. July 28, 1862.

PRIZE—ENEMY PROPERTY.

Vessel and cargo condemned as enemy property.

In admiralty.

## Case No. 12,338.

### The SARAH.

[2 Spr. 31.] [2]

District Court, D. Massachusetts. Jan., 1861.

SHIPPING—MASTER—DAMAGE TO CARGO—ABSENCE OF CREW.

1. Much must be left to the discretion of the master of a vessel in determining the necessity of a deviation from the course of the voyage, the port of distress, and the time of remaining in such port.

2. Where the crew of a coasting vessel, anchored in a harbor, were absent at night with the consent of the master, who remained on board alone, and the vessel was driven by a gale on a ledge of rocks; it was held, that the vessel was liable for the damage done thereby to the cargo, although the gale arose after the crew left, the absence of the crew rendering the vessel unseaworthy.

1 [Reported by Samuel Blatchford, Esq.]
2 [Reported by Hon. Richard H. Dana, Jr., and here reprinted by permission.]

In admiralty.

John Lathrop, for libellant.
Seth J. Thomas, for claimant.

SPRAGUE, District Judge. This is an action to recover damages for the non-delivery of a cargo of wood shipped by the libellant on the schooner Sarah, at the port of Wells, Maine, to be transported to Cambridge, in Massachusetts. It appears in evidence, that the vessel left Wells, with the wood on board, shortly before the state election in September last; that the crew consisted of the captain and two men: that on the night of the 4th of September, when within ten miles of Thatcher's-Island light, the captain left his course, and put back to Portsmouth harbor, where the vessel remained several days, and on the night of the 12th of the month was driven on a ledge of rocks during a severe gale, and the cargo swept overboard. The wood was afterwards recovered in a damaged condition, and sold by the master at Portsmouth. It also appears that the master went to Wells on the 8th of the month for the purpose of voting, returned on the 10th, the day of election, and allowed the two men who composed his crew to go home for the same purpose; and on the night the vessel was wrecked, the master was on board alone.

On this state of facts, the libellant contends: (1) That the vessel deviated by leaving her course without necessity. (2) That if it was necessary for her to leave her course, the master should have put into the nearest port, and should not have gone to Portsmouth. (3) That the vessel remained at Portsmouth longer than was necessary. (4) That the vessel was in an unseaworthy condition at the time of her loss, the master being the only person on board.

If either of these positions is true in point of fact, it follows as a conclusion of law that the libellant is entitled to recover. As to the first point, it appears in evidence, that, at the time the vessel left her course, she had all sails set, and that there was merely a pretty stiff breeze blowing. The master, however, testifies that he apprehended that a gale was coming on, and that he deemed it prudent to put back. Much, in matters of this nature, must be left to the judgment and discretion of a master. On the evidence, I am unable to say that the master transcended the limits placed to his authority by law, in leaving his course, in selecting Portsmouth as his port of refuge, and in remaining there as long as he did. I cannot, therefore, regard his acts in these respects as amounting to a breach of the contract of affreightment.

It is evident, however, that the vessel was in an unseaworthy condition at the time she met with the disaster. The master was the only person on board. He should either have kept his crew with him, or, if it was necessary to let them go home for any purpose, he should have procured suitable and competent

persons in their place. It appears that the vessel dragged her anchors before going on to the rocks. This perhaps might have been prevented by paying out the chain on both anchors. The master, being alone, was unable to do this. Whether this would have saved the vessel or not, I cannot consider the vessel in a seaworthy condition at the time of the disaster; and the claimant has not satisfied me, that the loss was in no way owing to such unseaworthiness. A decree must be entered for the libellant.